United States District Court
District of Rhode Island

Brian J. Woodburn,
Plaintiff,

CA 06 387S

Complaint
Civil Action No.
Jury Trial
Demanded

V.

Ashbel T. Wall, individually
and in his official capacity
as Director of the Department
of Corrections,
Joseph A. DiNitto, individually
and in his official capacity
as Associate Director, Classifications,
of Department of Corrections,
Defendants,

Preliminary Statement

1. This is a civil rights action filed by Brian Woodburn for declaratory and injunctive relief under 42 U.S.C. section 1983. Plaintiff ~~that defendants~~ alleges that defendants are intentionally endangering plaintiffs life and conspired with New Hampshire prison officials to cause plaintiff harm to prevent him from pursuing legal action against New Hampshire prison officials.

1

## Jurisdiction

2. This is a civil action authorized by 42 U.S.C. section 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States. This court has jurisdiction under 28 U.S.C. sections 1331 and 1343 (A) (3) Plaintiff seeks declaratory relief pursuant to 28 U.S.C. sections 2201 and 2202. Plaintiffs claims for injunctive relief are authorized by 28 U.S.C. sections 2283 and 2284 and Rule 65 of the Federal Rules of Civil Procedure.

## Plaintiff

3. Plaintiff, Brian Woodburn, is and was at all times mentioned herein, a prisoner of the Rhode Island Department of Corrections, he is currently confined in the High Security Center in Cranston, Rhode Island.

## Defendants

4. Defendant, Ashbel T. Wall, is the Director of the Rhode Island Department of Corrections and at all times mentioned herein, was responsible for the overall operation of the department and each institution under its jurisdiction, including the High Security Center. He is sued in his individual and official capacities.

5. Defendant, Joseph A. DiNitto, is an Associate Director of the Rhode Island Department of Corrections and is responsible for interstate compact transfers and classifications. He is sued in his individual and official capacities.

## Facts

6. Plaintiff was transferred to the Rhode Island Department of Corrections involuntarily on September 23rd, 2005.

7. While in Rhode Island Department of Corrections (herein after R.I.D.O.C.) plaintiff has been constantly harassed, endured verbal abuse of obscene, vulgar and threatening language.

8. Plaintiff is a "white supremace" and was transferred to R.I.D.O.C. to prevent him from pursuing legal action against New Hampshire prison officials, but New Hampshire told R.I.D.O.C. that plaintiff was a protective custody transfer and he could never return to New Hampshire because he has protection issues.

9. Because plaintiff is a white supremace in a predominately black prison he would have had some problems, but because he was sent to R.I.D.O.C. as a protective custody, he has had an extreme amount of

problems. Plaintiff has no protection issues in New Hampshire.

10. While in the Intake Center plaintiff was constantly verbally abuse by use of racial epiphets, other vulgar and obscene language and threatened regularly.

11. Prison officials in the Intake Center recieved numerous reports and information regarding plaintiffs safety and the harassment he was getting from black inmates.

12. In late December 2005 plaintiff was transferred to the Maximum Security Prison.

13. While in Maximum Security Prison plaintiff was constantly verbally abused by use of vulgar and obscene language, racial epiphets and threatened on a daily basis. Plaintiff was spit on, doused with urine while in his cell and on one occasion an inmate reached through the bars of plaintiffs cell and poked him with a sharp object, and threatened to kill the plaintiff. Plaintiff wasn't poked to cause a serious injury but to let him know that it was coming.

14. In early February 2006, after enduring this abuse in Maximum Security for over a month, plaintiff, out of fear for his life, came out of his cell and

started fighting with one of the inmates that he thought had threatened him.

15. When plaintiff was asked what had happened he stated that he was the aggressor and that someone had made a comment so he just started fighting. Plaintiff also stated that he was sick of this place and wanted to go back to New Hampshire. Plaintiff feared that if he was honest about what happened he would be subject to further abuse from other inmates and victimized.

16. Plaintiff was transferred to the High Security Center in April where he contacted defendant DiNitto about returning to New Hampshire because things were not working out. Defendant DiNitto said R.I.D.O.C. has no authority to send ~~me~~ Plaintiff back to New Hampshire but forwarded ~~my~~ Plaintiffs request to New Hampshire.

17. Plaintiff was trying to pursue legal action against New Hampshire prison officials so they refused to allow plaintiff to return, stating he had protection issues.

18. Plaintiff again contacted defendant DiNitto stating that his life was in danger because New Hampshire said that plaintiff was a protective custody and needs to be returned to New Hampshire because of this. Defendant DiNitto again stated that RIDOC has no authority to send him

back and again forwarded the request to New Hampshire who again denied it.

19. Plaintiff then contacted defendant Wall and explained how his life was in danger and he needed to be returned to New Hampshire for his safety and that he would take extreme measures to ensure his safety. Defendant Wall stated that plaintiff could only return to New Hampshire if they wanted plaintiff to return.

20. Defendant Wall also told plaintiff that if he felt threatened to just tell a staff. This option would prove to be difficult if plaintiff was being stabbed or seriously assaulted. But even if plaintiff could do this, it would just make things much worse.

21. Both ~~plaintiffs~~ defendants were informed by plaintiff that his life was in serious danger and both refused to return plaintiff to New Hampshire unless New Hampshire requested it, because R.I.D.O.C. has no authority to send plaintiff back.

22. Inmate Kenneth Pladsen was transferred to R.I.D.O.C. from Connecticut and did not want to be in R.I.D.O.C. and tried to return to Connecticut but had the same problem as plaintiff. But when inmate Pladsen repeatedly threatened to sue and proved to R.I.D.O.C. that

he was very knowledgeable of the law, R.I.D.O.C. felt that it was in their best interests to return inmate Pladsen to Connecticut even though Connecticut did not want him to return.

23. Connecticut told Rhode Island officials, verbally, that inmate Pladsen raped a female gaurd. This was false but caused Pladsen problems and he was labeled as a rapist.

24. By returning Pladsen to Connecticut the defendants have proven that they do have authority to send inmates back to the states that they were transferred from if it suits their interests.

25. Plaintiff has already contacted the Federal Bureau of investigations, state police, Governor, U.S. Department of Justice regarding what the defendants have done.

26. Due to the defendants refusal to send plaintiff back to New Hampshire while sending Pladsen back to Connecticut, makes plaintiff believe that the defendants are trying to have plaintiff seriously injured or killed because they are aware of the danger that plaintiff is subject to.

27. Upon information and belief, it is a policy

of R.I.D.O.C. to not accept transfers from out of state that have disciplinary records, that are extensive, which plaintiff has.

28. On August 4th, 2006, plaintiff sent defendant Wall a copy of his civil suit against New Hampshire prison officials. This suit explained all of the abuse plaintiff has endured while in R.I.D.O.C. and what happened to plaintiff in New Hampshire. Plaintiff sent this to defendant Wall to show him that his life really is in danger and that plaintiff really was trying to pursue legal action against New Hampshire.

29. On August 10th, 2006, plaintiff submitted a request to the Deputy Warden asking her to contact the F.B.I. and State Police so plaintiff could press criminal charges against Director Wall.

30. On August 15th, 2006, two investigators pulled plaintiff out of his cell to "investigate" this. Both investigators work for defendant Wall and told plaintiff that he couldn't press charges because he can't "prove anything" and threatened plaintiff with criminal charges if he contacted the F.B.I. They also stated that plaintiff would receive a disciplinary report for filing a false report. investigators intimidated plaintiff and tried to bully him around.

31. On August 20th, 2006 plaintiff was told that

he was recieving the ~~dis~~ disciplinary report and Lt. Avila read plaintiff the report. The investigators said that plaintiff made everything up so he could get transferred back to New Hampshire. Plaintiff never ~~admitted~~ said this because this is false. ~~(see attached disciplinary report.)~~

32. On August 20th, 2006, plaintiff wrote to the Governor and the Attorney General about his situation the letter to the governor was sent certified to make sure it didn't get "lost". Plaintiff explained his situation and asked for help.

## Exhaustion of Remedies

33. Plaintiff has exhausted all available remedies.

## First Cause of Action

34. By defendants refusing to transfer plaintiff back to New Hampshire, even when they were informed that his life was in danger, and sending inmate Kenneth Pladson back to Connecticut, Defendants were cruel and unusual and violated the equal protection clause, violating plaintiffs rights that are protected by the 8th and 14th amendments to the Constitution of the United States.

## Second Cause of Action

35. By defendants refusing to return plaintiff to New Hampshire, even after plaintiff made them aware that he was pursuing legal action against New Hampshire prison officials and this transfer was to prevent him from doing so, the defendants violated plaintiffs rights that are protected by the 1st, 5th and 14th amendments to the Constitution of the United States.

## Prayer For Relief

36. Plaintiff is suffering and will continue to suffer irreparable injury due to the conduct of the defendants. The plaintiff has no plain, adequate or complete remedy at law to correct the wrongs described herein. This will continue unless this honorable court grants plaintiffs declaratory and injunctive relief that he seeks.

Wherefore, plaintiff respectfully prays that this court enter judgement granting plaintiffs:

37. A declaration that the acts and omissions described herein violated plaintiff rights under the Constitution and Laws of the United States.

38. A preliminary and permanent injunction ordering defendants to:

A) Return plaintiff to New Hampshire immediately for his safety and to pursue legal action in New Hampshire.

39. Compensatory damages in the amount of 75,000.00 dollars against each defendant jointly and severally.

40. Punitive damages in the amount of 50,000.00 dollars against each defendant.

41. Plaintiffs costs in this suit

42. A jury trial on all issues triable by a jury.

43. Any additional relief that this court deems just and equitable.

Respectfully Submitted
Brian Woodburn-129614
P.O. Box 8200
Cranston, R.I.
02920

I declare under penalty of perjury that the foregoing is true and correct.

Brian Woodson
signature of plaintiff