**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**BRIAN J. WOODBURN**

**v.** **C. A. NO. 06-387 S**

**A. T. WALL AND JOSEPH DI NITTO**

**DEFENDANTS A. T. WALL'S AND JOSEPH DI NITTO'S PRE-TRIAL MEMORANDUM**

Plaintiff was convicted of a crime in the state of New Hampshire and transferred to the ACI in Rhode Island pursuant to the New England Interstate Compact existing between the two jurisdictions. Plaintiff alleges that while at the ACI, he has been constantly harassed and verbally abused; that as a white supremist held in protective custody, he has had an "extreme amount of problems"; that Plaintiff has been threatened regularly (see ¶ 8 through 10 of the Plaintiff's Complaint). Plaintiff also alleges that while at Maximum Security, he was spit on, sprayed with urine, and on one occasion, while in his cell, another inmate reached through the bar and poked him with a sharp object and threatened to kill him. Plaintiff does not identify this inmate (see ¶ 13 of the Plaintiff's Complaint). Plaintiff then alleges that in early February 2006 out of fear for his life, he exited his cell and began a fight with an inmate, who he thought had threatened him (see Plaintiff's Complaint ¶ 14). Plaintiff alleges that subsequent to this incident, he was transferred to High Security, because of he writing to Defendant DiNitto relative to his return to the state of New Hampshire (see Plaintiff's Complaint ¶ 16). Plaintiff alleges that Mr. DiNitto replied, indicating that the Rhode Island Department of Corrections had no authority to return Plaintiff to New Hampshire, but forwarded his request to New Hampshire. Plaintiff again wrote to Mr. DiNitto indicating

his life was in serious danger and that he wanted to be transferred to New Hampshire and again, Mr. DiNitto replied, stating that the Rhode Island Department of Corrections did not have the authority to return him (see Plaintiff's Complaint ¶ 18).

Plaintiff then indicates that he contacted Defendant Wall and explained that his life was in danger and that he needed to be returned to New Hampshire. Plaintiff alleges that Defendant Wall replied, advising Plaintiff to tell staff if he felt his life was in danger (see Plaintiff's Complaint ¶ 19-20).

Finally, the Complaint alleges that on August 4, 2006, Plaintiff sent Defendant A. T. Wall a copy of a civil action that he instituted against the state of New Hampshire prison officials (see Plaintiff's Complaint ¶ 28).

Plaintiff alleges that his rights under the Eighth Amendment to the United States Constitution have been violated; that his rights to equal protection under the law have been violated; that the Defendants, in refusing to return Plaintiff to New Hampshire have violated his First, Fifth and Fourteenth Amendment rights under the United States Constitution. Plaintiff seeks injunctive relief and compensatory and punitive damages against each Defendant.

## DEFENSE

## FIRST AMENDMENT CLAIM

Plaintiff, in conclusory fashion, alleges a violation of his First Amendment rights. Plaintiff alleges that the Defendants, in refusing to return the Plaintiff to the State of New Hampshire, are violating his First Amendment right in that Rhode Island authorities were aware that the Plaintiff was pursuing legal action against the prison authorities in the state of

New Hampshire, and that Rhode Island's failure to return him to that state results in a Constitutional violation (see Complaint, ¶ 35). However, said allegation is misplaced. Plaintiff, in his complaint, avers that he has already instituted a legal action against the New Hampshire prison authorities. Defendant A. T. Wall was made aware of that fact. In fact, Plaintiff alleges in Paragraph 28 of his Complaint that he sent a copy of his "civil suit" against New Hampshire prison officials to Defendant A. T. Wall.

In **Lewis v. Casey**, 518 U. S. 343 (1996), the United States Supreme Court held that in order for an inmate to make a *prima facie* case that his constitutional right to access to the courts has been denied, he must establish that the inadequacies of the prison resources resulted in an "actual injury".

It is well established that every inmate has a fundamental right to access to the courts to be petitioned for redress. **Barnes v. Smith, 430 U. S. 817, 828 (1977).** Plaintiff completely fails to aver any allegation whatsoever demonstrative of how Defendants precluded his access to the Courts or of he sustaining actual injury. Plaintiff just simply indicates in his Complaint that he made Defendant A. T. Wall aware of the fact that he was litigating in New Hampshire against the New Hampshire prison. In making said allegation, Plaintiff fails to even imply that in some way or some how, he cannot effectively litigate said claim. However, the United States Supreme Court in **Lewis** has declared that it is not a right to "litigate effectively" once in court. Plaintiff must show an actual injury to properly allege a denial of access to the courts by demonstrating that the alleged wrongdoing hindered his efforts to pursue illegal action. The Supreme Court has clearly stated that prison officials are not constitutionally obligated to enable inmates to become "litigating engines capable of filing evident from shareholder derivative actions to slip-and-fall

claims." **<u>Lewis</u>, 518 U. S. 355**. However, the prison must provide "tools that the inmates need to attack their sentences, directly or collaterally, in order to challenge the conditions of their confinement." **<u>Id.</u>** In order to prevail on a Constitutional claim, however, the inmate must be able to show that the lack of resources actually caused him injury.

> "He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library, that he was unable to even file a complaint." **<u>Lewis</u>, 518 U. S. at 351.**

## <u>42 U. S. C. § 1983</u>

Plaintiff has brought suit pursuant to 42 U. S. C. § 1983. § 1983 provides in pertinent part:

> "Every person who under the color of any statute, ordinance, regulation, custom or usage, of any state or territory of the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof, to the deprivation of any rights, privileges or immunities secured by the Constitution in Laws shall be liable to the party injured in an action at law, suit and equity, or other proper proceedings for redress . . . "

§ 1983 creates a cause of action for persons who are denied a federally protected right. **<u>Baker v. McCollan</u>, 443 U. S. 137 (1979).** The initial inquiry in a § 1983 action is (1) whether the conduct complained of was committed by a person under color of state law; and (2) whether the conduct applies to the Plaintiff of a Constitutional right or a Federal statutory right. **<u>Gomez v. Toledo</u>, 446 U. S. 635, 640 (1980).**

## <u>EIGHTH AMENDMENT CLAIMS</u>

Plaintiff avers, in his complaint, that since he has been at the ACI, he has been verbally tormented and harassed, spit on, had urine thrown at him and on one occasion, was poked with a sharp object by an inmate, who was reaching into his cell between the bars. Plaintiff does not identify any of the inmates who are responsible for said torment. Plaintiff alleges that the reason for his mistreatment by other inmates is that he is a declared white supremist and is in constant danger as a result. Plaintiff, does allege that he himself initiated and committed an assault on another inmate and it is undisputed that he was the aggressor and later, received a disciplinary booking for his actions. Plaintiff fails to allege that despite the constant danger he faces, he has not been assaulted or sustained any physical injuries.

It is well established that the prohibition against cruel and unusual punishment requires prison officials to "provide humane conditions of confinement" for inmates to **Giroux v. Somerset County**, **178 F. 3d 28, 31 (1st Cir. 1999); (quoting Farmer v. Brennan, 511 U. S. 825, 832 (1994)).** That requirement includes an obligation to **" 'e**nsure that inmates receive adequate food, clothing, shelter and medical care' "; and to " 'take reasonable measures' " to provide for their safety. **Id.** (quoting **Farmer, 511 U. S. at 832**. Establishing an Eighth Amendment violation by prison officials based upon conditions of confinement requires proof that the conditions presented " ' substantial risk of serious harm, ' " and that the officials had " ' a substantial risk of serious harm' ", and that the officials had " ' a sufficiently culpable state of mind and "described as 'deliberate indifference' to inmate health or safety." **Giroux**, **178 F.3d at 32 (quoting Farmer, 511 U. S. at 834)).** In order to show deliberate indifference, it must be shown that the prison officials " 'knows of and disregards an excessive risk to inmate health or safety.' " **I d. (quoting Farmer, 511 at U. S. at 837).** A subjective test is utilized in determining whether an official knew that a

substantial risk of harm existed. It requires evidence that the official had "an actual subjective appreciation of risk [that] has been likened to the standard for determining criminal recklessness." **<u>Id.</u>**

Moreover, even where such a risk is known, a prison official cannot be described as "deliberately indifferent" if he takes reasonable steps to avoid the harm. **<u>Farmer</u>, 511 U. S. at 843.** (" Prison officials who actually knew of the substantial risk to inmate health and safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.")

In this particular case, Plaintiff alleges that he, in fact, notified Defendant Wall of the danger he faced as a result of he being a white supremist. However, Defendant Wall, based on the Affidavit submitted, referred these issues to the Special Investigations Unit for an investigation. The Department's Special Investigations Unit has thoroughly investigated all of the Plaintiff's allegations of being at risk from other inmates. All conclusions of said investigation have resulted in no evidence of any substantial threat to the Plaintiff. Plaintiff is a protective-custody inmate and is on single-recreation status, which means that whenever he is permitted to leave his cell, he is alone, and not accompanied by any inmates.

Moreover, Plaintiff has failed to aver or demonstrate that, in fact, has suffered any injury at the hands of other inmates because of his white supremist status. Plaintiff also fails to identify any of the other inmates who allegedly have subjected him to intimidation and threats. In fact, Plaintiff himself attacked another inmate without provocation. Accordingly, Plaintiff's Eighth Amendment claims must fail and he has failed to show any facts which would support his Eighth Amendment claims. The undisputed facts clearly establish that the named Defendants responded reasonably to the Plaintiff's complaints,

which were referred to the Department's Special Investigations Unit and resulted in no evidence being discovered to substantiate the Plaintiff's complaints.

## PROBABLE LENGTH OF TRIAL

Defendants submit that 2 days shall be required for trial.

## EXHIBITS

A. Plaintiff's classification interstate file.

B. Plaintiff's ACI medical record.

**C.** The Department's Special Investigations Unit investigative report relative to the incident alleged in Plaintiff's complaint.

## CERTIFICATION

I hereby certify that on this 1st day of June, 2007 a true copy of the within was mailed to:

Brian J. Woodburn
P.O. Box 8200
Cranston, RI 02920

/S/ Michael B. Grant